UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 22-80059-Cr-CANNON/REINHART

UNITED STATES OF AMERICA,

                Plaintiff,

vs.

FREDY ALEXANDER AVILA,

                Defendant.
_____/

## PLEA AGREEMENT

    The United States of America (hereinafter "the United States" or "this Office") and FREDY ALEXANDER AVILA (hereinafter referred to as the "defendant"), hereby enter into the following agreement:

    1.    The defendant agrees to plead guilty to the sole Count of the Information, which count charges the defendant with Knowingly and Intentionally Attempting to Possess with Intent to Distribute a mixture and substance containing a detectable amount of cocaine, in violation of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(C), 846, and Title 18, United States Code, Section 2. The defendant agrees that he is, in fact, guilty of that offense.

    2.    In return for the defendant's agreement to plead guilty to the sole count of the Information, the United States agrees to move to dismiss the indictment originally filed in this case at time of sentencing. The United States further agrees to a joint

recommendation that the defendant be sentenced to the low end of the guidelines the Court finds applicable to his offense of conviction, as further explained below.

3. The United States further agrees that it will recommend at sentencing that the Court reduce by two levels the sentencing guideline level applicable to the defendant's offense, pursuant to Section 3E1.1(a) of the Sentencing Guidelines, based upon the defendant's recognition and affirmative and timely acceptance of personal responsibility. If at the time of sentencing the defendant's offense level is determined to be 16 or greater, the government will make a motion requesting an additional one level decrease pursuant to Section 3E1.1(b) of the Sentencing Guidelines, stating that the defendant has assisted authorities in the investigation or prosecution of his own misconduct by timely notifying authorities of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the government and the Court to allocate their resources efficiently. The United States, will not be required to make this motion and recommendation, or the non-binding sentencing stipulations set forth below, however, if the defendant: (1) fails or refuses to make a full, accurate and complete disclosure to the probation office of the circumstances surrounding the relevant offense conduct; (2) is found to have misrepresented facts to the government prior to entering into this plea agreement; (3) commits any misconduct after entering into this plea agreement, including but not limited to committing a state or federal offense, violating any term of release, or making false statements or misrepresentations to any governmental entity or official; or, (4) attempts to withdraw his guilty plea after a finding by the Court that such was knowingly and voluntarily made.

4.     **Agreement to Guidelines Sentence:** This Office and the defendant agree that, although not binding on the probation office or the Court, they will jointly recommend that the Court impose a sentence within the advisory sentencing guideline range produced by application of the Sentencing Guidelines. Although not binding on the probation office or the Court, this Office and the defendant further agree that they will jointly recommend that the Court neither depart upward nor depart downward under the Sentencing Guidelines when determining the advisory sentencing guideline range in this case.

5.     The defendant is aware that the sentence will be imposed by the Court after considering the Federal Sentencing Guidelines and Policy Statements (hereinafter "Sentencing Guidelines").  The defendant acknowledges and understands that the Court will compute an advisory sentence under the Sentencing Guidelines and that the applicable guidelines will be determined by the Court relying in part on the results of a Pre-Sentence Investigation by the Court's probation office, which investigation will commence after the guilty plea has been entered.  The defendant is also aware that, under certain circumstances, the Court may depart from the advisory sentencing guideline range that it has computed, and may raise or lower that advisory sentence under the Sentencing Guidelines.  The defendant is further aware and understands that the Court is required to consider the advisory guideline range determined under the Sentencing Guidelines, but is not bound to impose that sentence; the Court is permitted to tailor the ultimate sentence in light of other statutory concerns, and such sentence may be either more severe or less severe than the Sentencing Guidelines' advisory sentence.  Knowing these facts, the defendant understands and acknowledges that the

Court has the authority to impose any sentence within and up to the statutory maximum authorized by law for the offense identified in paragraph 1, and that the defendant may not withdraw the plea solely as a result of the sentence imposed, or the Court's decision not to follow the parties' non-binding sentencing stipulations.

6. **Application of the "Safety Valve":** This Office and the defendant agree that, although not binding on the probation office or the Court, they will jointly recommend that, pursuant to Section 5C1.2 of the Sentencing Guidelines, the Court impose a sentence without regard to any statutory minimum sentence identified below, provided that:

(a) The defendant is not found to have more than four criminal history points, as determined under the Sentencing Guidelines;

(b) Not later than the time of the sentencing hearing, the defendant provides to this Office a statement truthfully setting forth all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan as charged in the indictment. The government notes that the defendant has already complied with this requirement; and

(c) The defendant is not found to have used violence or threats of violence, or to have possessed a firearm or other dangerous weapon in connection with the offense; that the offense did not result in death or serious bodily injury to any person; and that the defendant is not found to have been an organizer, leader, manager or supervisor of others in the offense. The government notes that it has no information or evidence that in connection with the offense, the defendant possessed a firearm or other dangerous weapon, or served as an organizer, leader, manager or supervisor of others.

4

7. **Maximum Penalties:** As to the sole Count of the Information, the defendant understands and agrees he faces a maximum penalty of up to twenty (20) years' imprisonment, and a fine of up to one million dollars ($1,000,000), to be followed by a minimum three (3) year, to a maximum life[1] term of supervised release.

8. **Immigration Warning (Non-Citizen):** Defendant recognizes that pleading guilty may have consequences with respect to the defendant's immigration status where, as here, the defendant is not a citizen of the United States. Under federal law, a broad range of crimes are removable offenses, including the offense(s) to which defendant is pleading guilty. Indeed, because defendant is pleading guilty to Knowingly and Intentionally Attempting to Possess with Intent to Distribute a mixture and substance containing a detectable amount of cocaine, in violation of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(C), and 846, removal is presumptively mandatory. Removal and other immigration consequences are the subject of a separate proceeding, however, and defendant understands that no one, including the defendant's attorney or the Court, can predict to a certainty the effect of the defendant's conviction on the defendant's immigration status. Defendant nevertheless affirms that the defendant wants to plead guilty regardless of any immigration consequences that the defendant's plea may entail, even if the consequence is the defendant's automatic removal from the United States.

9. The defendant further understand and acknowledges that, in addition to any sentence imposed under the preceding paragraph of this agreement, a special

---

[1] *See United States v. Sanchez*, 269 F.3d 1250, 1287-88 (11th Cir. 2001)(where statute does not otherwise specify a maximum sentence, maximum sentence is "life").

assessment in the amount of $100.00 will be imposed as to the count of conviction. The defendant agrees that any special assessment imposed shall be paid at the time of sentencing. Payment may be either in the form of cashier's check or money order made payable to the Clerk of Court, Southern District of Florida, or in cash. It is the prosecuting AUSA's duty to ensure that the special assessment has been paid at the time of sentencing. If a defendant is financially unable to pay the special assessment, the defendant should be required to present evidence to the United States and the Court as to the reasons for her failure to pay.

10. **Non-Binding Sentencing Stipulations:** The United States, the defendant, and defendant's counsel, agree that, although not binding on the Probation Office or the Court, they will jointly recommend that the Court make the following findings and conclusions as to the sentence to be imposed:

a.) That the section of the United States Sentencing Guidelines (USSG) applicable to the defendant's offense of conviction is USSG § 2D1.1;

b.) **Quantity of Narcotics:** That the quantity of controlled substance involved in the offense, for purpose of Section 2D1.1(a) and (c) of the Sentencing Guidelines, was **192.0 net grams** of a mixture and substance containing cocaine, a Schedule II controlled substance, which pursuant to USSG §§ 2D1.1(a)(5) and (c)(12), would result in a Base Offense Level of 16;

c.) That no other specific offense characteristics appear applicable to the defendant or the offense;

d.) That, assuming the Court finds the defendant qualified for the full three (3) level downward adjustment for Acceptance of Responsibility pursuant to USSG §§

6

3E1.1(a)-(b), the defendant's offense level would be reduced to a Level 13;

e.) That, assuming the Court finds the defendant qualified under the requirements of the "Safety Valve" his sentence ought to be reduced a further two (2) levels pursuant to Title 18, United States Code, Section 3553(f) and USSG § 2D1.1(b)(18), resulting in an offense Level of 11;

f.) That the defendant has no scorable criminal history in the United States, and thus is in Criminal History Category I (the defendant has a single Operating Without a Valid License charge from Margate, Florida, resulting in a withhold of adjudication on February 11, 2021);

g.) Accordingly, the defendant's adjusted Offense Level would be Level 11, Criminal History Category I, resulting in an advisory guidelines range of 8-14 months' imprisonment.

h.) That the parties respectfully submit, and jointly stipulated and agree to recommend to this Honorable Court, that a sentence at the low end of the aforementioned guidelines, that is, a sentence of eight (8) months' imprisonment, constitutes a just and reasonable sentence and is sufficient, and not greater than necessary, to accomplish the sentencing goals articulated under Title 18, United States Code, Section 3553(a).

11. The Office of the United States Attorney for the Southern District of Florida (hereinafter "Office"), and the defendant, reserve the right to inform the Court and the probation office of all facts pertinent to the sentencing process, including all relevant information concerning the offenses committed, whether charged or not, as well as concerning the defendant and the defendant's background. Subject only to the express

terms of any agreed-upon sentencing recommendations contained in this agreement, this Office further reserves the right to make any recommendation as to the quality and quantity of punishment.

12. The defendant is aware that his sentence has not yet been determined by the Court. The defendant also is aware that any estimate of the probable sentencing range or sentence that the defendant may receive, whether that estimate comes from the defendant's attorney, the government, or the probation office, is a prediction, not a promise, and is not binding on the government, the probation office or the Court. The defendant understands further that any recommendation that the government makes to the Court as to sentencing, whether pursuant to this agreement or otherwise, is not binding on the Court and the Court may disregard the recommendation in its entirety. The defendant understands and acknowledges, as previously acknowledged above, that the defendant may not withdraw his plea based upon the Court's decision not to accept a sentencing recommendation made by the defendant, the government, or a recommendation made jointly by both the defendant and the government.

13. This Plea Agreement constitutes the entire agreement and understanding between the United States and the defendant. There are no other agreements,

8

promises, representations, or understandings with respect to the defendant's guilty plea except as set forth herein.

Respectfully submitted,

JUAN ANTONIO GONZALEZ
UNITED STATES ATTORNEY

Date: 8/11/2022

By: _____
JOHN C. McMILLAN
ASSISTANT UNITED STATES ATTORNEY

Date: 7/22/22

By: _____
SCOTT BERRY
ASSISTANT FEDERAL PUBLIC DEFENDER
ATTORNEY FOR DEFENDANT

Date: 8/11/22

By: _____
FREDY AVILA
DEFENDANT

Translated into Spanish by: GEORGE E. NOTARIO
(Printed Name)

_____
(Signature)

On 22, JULY, 2022, at 2:30 PM, WPB, Florida

9

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 22-80059-Cr-CANNON/REINHART

UNITED STATES OF AMERICA,

        Plaintiff,

vs.

FREDY ALEXANDER AVILA,

        Defendant.
_____/

## STIPULATED STATEMENT OF FACTS

### A.    Elements of Offense

By his signature below, the defendant understands and acknowledges that were this matter to have proceeded to trial, the United States would have had to prove the following elements beyond a reasonable doubt:

As to the sole Count of the Information, which count charges the defendant with Knowingly and Intentionally Attempting to Possess with Intent to Distribute a mixture and substance containing a detectable amount of cocaine, in violation of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(C), 846, and Title 18, United States Code, Section 2, that:

    (1)    The defendant knowingly attempted to possess a controlled substance; and

    (2)    The defendant intended to distribute the controlled substance.

To "attempt" means that the defendant's intent was strongly corroborated by his taking a substantial step towards committing the crime. A "substantial step" is an important

1

action leading up to the commission of an offense -- not just an inconsequential act. It must be more than simply preparing. It must be an act that would normally result in commission of the offense. To "intend to distribute" is to plan to deliver possession of a controlled substance to someone else, even if nothing of value is exchanged.

### B. Statement of Facts

Had this matter proceeded to trial, the United States would have proven the following facts beyond a reasonable doubt, through admissible testimony and evidence, which the defendant agrees, by his signature below, are true and correct facts, and satisfy all the necessary elements of the offense of conviction referenced above and in paragraph 1 of the Plea Agreement:

1. On March 23, 2022, U.S. Customs and Border Protection (CBP) officers assigned to a DHL International Shipping facility in Miami, Southern District of Florida, identified a suspicious inbound DHL parcel with tracking number 8228623104 (hereinafter "the PACKAGE"), which was sent from an address in Guatemala addressed to "Sergio Cardenas" at 680 Enfield Street, Boca Raton, FL 33487 (the "RECIPIENT"), an address located in Palm Beach County, Southern District of Florida. The PACKAGE was manifested as purportedly containing "atole, black beans, cooking spices."

2. On March 23, 2022, CBP officers conducted a customs x-ray examination of the PACKAGE, and anomalies were detected which caused an inspection of the contents of the PACKAGE. The parcel was found to contain 2 bags of flour mix, 4 cans of beans, 1 bag of powdered milk, and 12 packages of seasoning powder. All packages were probed and one of the bags was found to contain a quantity of cocaine, as confirmed by a field test. Subsequent laboratory analysis conducted by a forensic chemist assigned to the U.S. Drug

2

Enforcement Administration's Southeast Regional Laboratory in Miami, determined the suspected controlled substance to consist of a net 192.0 grams of a mixture and substance containing cocaine, a Schedule II controlled substance.

3. On March 30, 2022, following installation of a judically-authorized tracking device and beacon within the PACKAGE and replacement of the actual controlled substance (cocaine) with a replica inert substance, HSI agents along with other law enforcement partners conducted an operation in which a "DHL delivery attempt" tag was delivered to the delivery address on the exterior of the PACKAGE, 680 Enfield Street, Boca Raton, FL 33487 (hereinafter the "680 Enfield Street address"), by an undercover agent, and left on the door. The tag included a phone number that the recipient was to call in order to arrange the pickup of the PACKAGE. The sender of the package listed (954) 422-7351 as the number for the recipient, "Sergio Cardenas." On March 30, 2022, an undercover agent called the number in an unsuccessful attempt to reach the recipient via a telephone call to (954) 422-7351 to arrange for the pick-up of the parcel, which was answered by a generic, default voice mail recording.

4. Agents had been planning on delivering the PACKAGE to the 680 Enfield Street address on or about April 4, 2022. However, before such could take place, law enforcement received notification from the common carrier, DHL, that a request has been received by DHL online electronically by someone having access to the DHL tracking number 8228623104, requesting that the PACKAGE now be re-routed and delivered to the address of 4160 Woodside Drive, Apartment #1, Coral Springs, Broward County, Southern District of Florida 33065 (hereinafter "the Coral Springs Apartment"), by end of day, Tuesday, April 5, 2022.

5.      On April 5, 2022, agents conducted a controlled delivery of the PACKAGE, to the Coral Springs Apartment.  Using an undercover agent (UC), the PACKAGE was delivered at approximately 1:00 p.m.  The undercover agent made contact with a Hispanic male, "DQ", who advised that the parcel was sent to the wrong address but that he knew the person to whom it belonged and would accept delivery.  DQ told the UC package delivery person that he would call the owner of the package to let him know it had arrived. Agents maintained a visual surveillance of the Coral Springs Apartment and monitored the electronic devices contained within the PACKAGE.  Surveillance units observed multiple individuals arrive and depart the Coral Springs Apartment during a five and half-hour period following the PACKAGE's delivery, but the PACKAGE was never opened and never left the Coral Springs Apartment.

6.      At approximately 6:35 p.m., on April 5, 2022, agents approached the Coral Springs Apartment to conduct a knock and talk and retrieve the PACKAGE.  The door was answered by an juvenile male.  SA Xavier Martinez asked that he call his parents to the door.  A couple (DQ and his spouse) promptly came to the door and greeted the agents. SA Xavier Martinez explained that they were there in regards to a parcel that had been delivered earlier that day.  SA Martinez asked for permission to enter the home and permission was granted by both adults.  SA Martinez explained that the package that he accepted earlier was found to contain a large quantity of cocaine.  DQ explained that he had no idea and that he believed it belonged to someone who used to live there with them. He explained that it was a man he knew as "Belsi."  DQ explained that he was willing to call "Belsi" and inquire as to whether the package belonged to him. In the presence of SA Xavier Martinez and Taskforce Agent Christian Padilla, DQ made a recorded call to "Belsi" at (561)

4

729 2996. The call was entirely in the Spanish language which both agents speak/understand fluently. Agents were able to overhear "Belsi" confirm that in fact the parcel was his and that he had forgotten to tell his family members to pick it up. He apologized and told DQ that he would be coming to the Coral Springs Apartment in approximately one hour to pick up the parcel. After the call was concluded, DQ agreed to give the package to "Belsi" once he arrived.

7. At approximately 7:00 p.m., on April 5, 2022 agents resumed their surveillance roles and reestablished visual contact with the Coral Springs Apartment. At approximately 7:22 p.m., a brown Toyota RAV4 (hereinafter RAV4) arrived at the Coral Springs Apartment. A records check of the RAV4's Florida license plate revealed a registered owner of "Fredy Avila." Soon after arriving, SA Martinez observed an occupant seated in the front passenger seat (later confirmed by DQ to be the man he knew as "Belsi") exiting the vehicle and walking towards the door of the Coral Springs Apartment. SA Xavier Martinez observed "Belsi" walk back to the RAV4 with the PACKAGE in his hand. "Belsi" placed the PACKAGE inside the vehicle and walked a short distance way to urinate on a hedge. "Belsi" then returned to the RAV4 and sat in the front passenger seat. The RAV4 was then observed leaving the Coral Springs Apartment and surveillance units followed the vehicle to a shopping plaza on the southwest corner of West Sample Road and Holiday Spring Boulevard in Margate, Florida.

8. The RAV4 arrived at the plaza at approximately 7:28 p.m. Once there, the RAV4 parked in the southwest corner of the lot, in between the La Union bakery and the Bodegon supermarket. The occupants of the RAV4 were observed entering La Union bakery. Shortly after, the driver of the RAV4, later identified as Fredy Alexander AVILA, the

5

defendant in this case, was seen returning to the RAV4 and driving it to the front of the Bodegon supermarket. Surveillance units were able to observe the RAV4 parked there while it was occupied only by its driver, defendant AVILA. At approximately 7:45 p.m., SA Martinez received a positive alert signal from the beacon in the PACKAGE confirming that it had been opened. Agents promptly approached the RAV4 and took the driver into custody, who identified himself as "Fredy Avila." SA Xavier Martinez placed defendant AVILA under arrest and when he pulled him out of the RAV4, he was able to see the PACKAGE sitting on the front console in plain sight. SA Xavier Martinez also observed that the PACKAGE had been opened. Defendant AVILA was searched for weapons and asked as to the whereabout of his passenger. Defendant AVILA indicated that his passenger had gone into the Bodegon supermarket to purchase water and beer. Agents conducted a search of the supermarket and its immediate surrounding area, but were unable to locate the passenger of the RAV4 ("Belsi").

9. Shortly after defendant AVILA's arrest, SA Martinez applied a black light on AVILA's hands. Upon doing so, SA Martinez observed various green marks on his hands. SA Xavier Martinez had applied a detection powder to the inside of the PACKAGE and its contents. The green marks further confirmed that defendant AVILA was the individual who opened the PACKAGE along with the fact that he was the only one on the vehicle when the beacon alerted to its opening. Three cellular phones were recovered from within defendant AVILA's vehicle.

10. Agents conducted a search of the RAV4 incident to arrest and found a piece of drywall approximate 18" x 12" in size. On the drywall, the name "Sergio Cardenas" was written as well as the following addresses, "680 Enfield St. Boca Raton 33487" and "4160

6

Woodside Dr Ap 1 Coral Springs 33065". There was also the phone number, "954-422-7351" written on the drywall. SA Martinez would testify that the Boca Raton address matched the "Shipment To" address originally on the PACKAGE, while the Coral Springs Address is the address of the Coral Springs Apartment referenced above. The phone number also matched the number on the DHL paperwork and was listed at the recipients phone number. Also found in the RAV4 was a composition book with notes consistent with a possible drug ledger and an empty United Parcel Service (UPS) envelope with defendant AVILA's name and an address of 3870 Riverside Dr, Apt 1, Coral Springs, FL 33065.

11.     Homeland Security Investigations (HSI) Task Force Officer (TFO) Christian Padilla, who has previously been admitted as an expert witness in the street level distribution of controlled substances in the United States District Court for the Southern District of Florida, on at least two prior occasions, would testify that, based on his training and experience the quantity and packaging of the controlled substances recovered from the defendant's vehicle are consistent with possession of said controlled substances for

7

purposes of distribution and sale, and not consistent with possession of such controlled substances for purposes of mere personal consumption or use.

Respectfully submitted,

JUAN ANTONIO GONZALEZ
UNITED STATES ATTORNEY

BY: _____
JOHN C. McMILLAN
ASSISTANT UNITED STATES ATTORNEY

SEEN, AGREED AND APPROVED:

_____  8/11/22
FREDY ALEXANDER AVILA
DEFENDANT

_____
SCOTT BERRY
ASSISTANT FEDERAL PUBLIC DEFENDER
ATTORNEY FOR DEFENDANT

Dated: 7/22/22

Translated into Spanish by: George Notario
(Printed Name)

_____
(Signature)

On 22 JULY, 2022, at WEST PALM BCY, Florida

8